J-A19040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMIE SEMULKA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT J. SEMULKA, | : | |
| | : | |
| Appellant | : | No. 1302 WDA 2014 |

Appeal from the Order entered on July 9, 2014
in the Court of Common Pleas of Washington County,
Civil Division, No. 2008-5617

BEFORE:  BENDER, P.J.E., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 31, 2015**

Robert J. Semulka ("Husband") appeals from the Order enforcing the divorce settlement agreement.  We affirm in part and reverse in part.

Husband married Jamie Semulka ("Wife") on May 30, 1992.  The parties have two adult children together, ages twenty-one and nineteen. The parties separated, and Wife filed her first Complaint in divorce on March 21, 2006.[1]  On June 11, 2007, the parties entered into a divorce settlement agreement ("Agreement").  The Agreement provided, *inter alia*, that Husband would pay Wife $40,000.00 by December 31, 2011,[2] that Husband

---

[1] We note that Wife obtained new counsel in 2008, and subsequently filed a second Complaint in divorce.

[2] The Agreement states that Husband shall pay Wife $5,000.00 in the first year (2008-2009), $6,000.00 in the second year (2009-2010), and the remaining balance by December 31, 2011.  Agreement, 6/11/07, at 5 (unnumbered).

and Wife would share all costs of post-secondary education for their children, and that the Agreement shall be incorporated, but not merged, with the Divorce Decree that is entered. The Agreement provided that, if either party breached the Agreement, the breaching party would compensate the non-breaching party for any fees incurred throughout enforcement of the Agreement.

From December 2009 to November 2010, Husband moved into Wife's residence and the parties lived together. On March 10, 2011, a final Divorce Decree was entered. Subsequently, Husband failed to comply with the terms of the Agreement by failing to make any payments to Wife, and Wife filed a Petition to Enforce the Agreement on November 26, 2013. On July 9, 2014, the trial court issued an Order granting Wife's Petition, and directing Husband to pay Wife $40,000.00, 50% of their children's post-secondary education expenses in the amount of $15,232.21, and $2,213.75 in counsel fees. Husband was directed to pay Wife the above amounts, or make other payment arrangements with Wife, within ninety days of the Order.

Husband filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Husband raises the following questions for our review:

I. Whether the [t]rial [c]ourt erred in not adopting the doctrine of abrogation, which would have found that the unexecuted payment terms of the [Agreement] were abrogated and no longer enforceable, when the parties reconciled and lived together for almost a year, from December of 2009 through November of 2010[?]

II. Whether the [t]rial [c]ourt erred in not following the law and the evidence presented that [Wife's] failure to take action to enforce the [Agreement] over the course of more than six years[,] and her other words and actions[,] clearly established her intent to abandon the agreement and to waive [Husband's] obligation to make payments[?]

III. Whether the [t]rial [c]ourt erred in ordering [Husband] to pay for 50% of the parties' children's post-secondary education expenses, and did not compute the expenses correctly, when the Agreement states that: "Husband shall share all costs of post[-]secondary education for all children with Wife." Accordingly, [Husband] should only be responsible for 50% of the educational expenses actually paid for, out of pocket, by [Wife][?]

IV. Whether the [t]rial [c]ourt erred in ordering [Husband] to pay for [Wife's] counsel fees[,] when [Husband] never breached the Agreement; [Wife] waited over six years before bringing the [Petition to Enforce]; and where [Husband] had reasonable expectations at law and based on the facts that the [Agreement] had either been abrogated or modified by the words and actions of the parties, so that the payment terms were no longer subject to enforcement[?]

Brief for Appellant at 5-6.

"The determination of marital property rights through settlement agreements has long been permitted, and even encouraged." *Adams v. Adams*, 848 A.2d 991, 993 (Pa. Super. 2004) (citation and ellipses omitted); *see also* 23 Pa.C.S.A. § 3105. A property settlement agreement must be treated as a separate and independent contract when it does not merge with the Divorce Decree. *McMahon v. McMahon*, 612 A.2d 1360, 1363 (Pa. Super. 1990). "A marital settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise." *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa. Super.

2005) (citation and brackets omitted); *see also Gaster v. Gaster*, 703 A.2d 513, 515 (Pa. Super. 1997) (stating that where the settlement agreement was not merged into the divorce decree, it is enforceable at law or equity, and is governed by the law of contracts). Contract interpretation is a question of law; therefore, our standard of review is plenary. *Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007).

"[A] court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation." *Habjan v. Habjan*, 73 A.3d 630, 640 (Pa. Super. 2013). "Where a settlement agreement contains all of the requisites of a valid contract, a court must enforce the terms of the agreement." *Mastrioni-Mucker v. Allstate Ins.*, 976 A.2d 510, 518 (Pa. Super. 2007). "Under ordinary contract law, contracts are enforceable when parties reach [a] mutual agreement, exchange consideration[,] and have set forth terms of their bargain with sufficient clarity." *Biddle v. Johnsonbaugh*, 664 A.2d 159, 163 (Pa. Super. 1995). A binding agreement exists where all parties come to a meeting of the minds on all essential terms of the agreement. *Mastrioni-Mucker*, 976 A.2d at 518.

In his first claim, Husband contends that the Agreement is unenforceable. Brief for Appellant at 16. Specifically, Husband argues that Pennsylvania law should join other states and adopt the doctrine of abrogation, which renders the unexecuted portion of a marital settlement

agreement void when the parties reconcile. *Id*. Husband claims that the parties reconciled when Husband and Wife lived together for a brief period beginning in 2009. *Id*. at 16-17. During this brief period, Husband asserts he and Wife agreed that there was no need to enforce the Agreement. *Id*. at 17. Husband argues that this Court should find the unexecuted portions of the Agreement, those that are the subject of Wife's Petition, unenforceable based on this reconciliation. *Id*. at 19.

Marital settlement agreements are classified as either separation or postnuptial agreements. *See Vaccarello v. Vaccarello*, 757 A.2d 909, 911 (Pa. 2000). Whether an agreement is a postnuptial agreement depends on the intent of the parties, as gathered from the language of the agreement. *See Carosone v. Carosone*, 688 A.2d 733, 735 (Pa. Super. 1997). "Where [the parties] desire to settle and determine their respective property rights finally and for all time[, the agreement] should be construed as a postnuptial agreement." *Vaccarello*, 757 A.2d at 911; *see also In re Fratoni Estate*, 198 A.2d 507, 509 (Pa. 1964) (stating that a postnuptial agreement exists where the document includes a "release and relinquishment of all rights or claims of distribution"). Further, postnuptial agreements are not abrogated by reconciliation of the parties. *See Vaccarello*, 757 A.2d at 915.[3]

---

[3] We note that separation agreements may be abrogated. *See In re Ray's Estate,* 156 A. 64, 66 (Pa. 1931) (stating that only separation agreements may be abrogated by reconciliation of husband and wife).

Here, the Agreement provides that Husband and Wife intended to completely settle all matters involving their real and personal property. Agreement, 6/11/07, at 1 (unnumbered). The Agreement also provides that Husband and Wife settle and relinquish all claims of equitable distribution, maintenance of children between them, and their respective estates. *Id*. Husband and Wife agreed to relinquish all claims against any current or future property of the other, and any claim against the estate of the other party. *Id*. at 3 (unnumbered). Husband additionally agreed to pay Wife $40,000.00 by December 31, 2011. *Id*. at 5 (unnumbered). Husband and Wife agreed to share all costs of their children's post-secondary education. *Id*. at 6 (unnumbered). In the event that either party breached the terms of the Agreement, the breaching party agreed to pay the attorney's fees of the non-breaching party, incurred in enforcing the Agreement. *Id*. at 10.

Based on our review, we conclude that the Agreement is an enforceable postnuptial agreement. *See Vaccarello*, 757 A.2d at 909 (stating that a valid postnuptial agreement exists where the parties agree to settle and relinquish their property rights, matters of support and alimony, and where the parties relinquished their rights to each other's estate); *see also id*. at 910 (stating that a valid postnuptial agreement exists where the agreement is a complete settlement of any and all claims); *Wolfe v. Wolfe*, 491 A.2d 281, 283-84 (Pa. Super. 1985) (stating that a valid postnuptial agreement exists where husband promised to pay wife $25,000.00, and

where wife retained title to a residence). Further, the Agreement was not abrogated by the alleged reconciliation of Husband and Wife. **See Vacarello**, 757 A.2d at 915 (holding that a postnuptial agreement is not abrogated by reconciliation).[4] Thus, the Agreement is enforceable, and Husband must comply with its terms.

In his second claim, Husband contends that Wife intended to abandon and modify the Agreement. Brief for Appellant at 24. Husband argues that the reconciliation with Wife, coupled with her actions, demonstrated her intent to abandon the Agreement. **Id**. Husband contends that during the reconciliation period; Wife did not attempt to enforce any of the unexecuted provisions of the Agreement. **Id**. at 25-26. Specifically, Husband asserts that Wife did not seek the annual payments towards the $40,000.00 during their reconciliation. **Id**. at 25. Also, Husband states that Wife did not notify him of particular costs and details concerning his children's post-secondary education. **Id**. Husband claims that Wife orally modified the Agreement when she allowed Husband's monetary obligation outside of the Agreement to lapse during their reconciliation. **Id**. at 27. Husband further claims that Wife orally modified the Agreement when Wife did not take steps to enforce the Agreement, and when Wife failed to enforce the Agreement during any

---

[4] Husband cites to numerous cases from other jurisdictions that allow for the abrogation of postnuptial agreements. However, these cases are not binding precedent in Pennsylvania. **See Charlie v. Erie Ins. Exch.**, 100 A.3d 244, 254 n.11 (Pa. Super. 2014) (stating that other state's decisions are not binding precedent on this Court).

- 7 -

of the litigation that followed the parties' divorce. *Id*. at 27. Husband additionally asserts that Wife's statement regarding her financial independence demonstrated an oral modification of the Agreement. *Id*. at 28.

A written contract may be orally modified, even when the agreement only permits written modifications. *Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs.*, 685 A.2d 141, 146 (Pa. Super. 1996). An agreement may be modified with the assent of both contracting parties so long as the modification is supported by consideration. *Wilcox v. Regester*, 207 A.2d 817, 821 (Pa. 1965). "[A]n oral modification of a written contract must be proved by clear, precise and convincing evidence." *Fina v. Fina*, 737 A.2d 760, 764 (Pa. Super. 1999). The trial court has the burden of assessing credibility of witnesses and weighing the evidence presented by both parties. *Id*. at 765.

At the hearing, Husband argued that the parties agreed to an oral modification of the Agreement. N.T., 12/16/14, at 106-07. Wife argued that she never agreed to orally modify the Agreement. *Id*. at 67. The trial court found Wife's testimony credible. *See* Trial Court Opinion, 9/15/14, at 5; *see also Fina*, 737 A.2d at 765 (stating that this Court is bound by the trial court's findings of fact and credibility determinations). We additionally observe that the alleged oral modification does not provide a benefit to Wife for relieving Husband of all payment obligations in the Agreement. *See*

*Regester*, 207 A.2d at 821 (stating that an oral modification must be supported by consideration). Based on our review of the record, we conclude that Husband and Wife did not agree to an oral modification of the Agreement by clear and convincing evidence.

Further, the Agreement provides that neither party has to continually demand performance of the terms in order to maintain the ability to enforce the Agreement. *See* Agreement, 6/11/07, at 8. Thus, the record supports the trial court's finding that it was not Wife's intention to abandon the Agreement. *See Purdy v. Purdy*, 715 A.2d 473, 475 (Pa. Super. 1998) (stating that marital settlement agreements are subject to contract law, and that the parties' intentions must be ascertained from the document). Accordingly, Husband's second claim is without merit.

In his third claim, Husband contests the amount of his shared portion of his children's post-secondary education expenses. Brief for Appellant at 30. Husband argues that, according to the Agreement, he is responsible for fifty-percent of reasonable expenses actually incurred, out of pocket, by Wife for their children's post-secondary education needs. *Id*. Specifically, Husband asserts that the trial court improperly calculated Wife's expenses at $30,464.41, and ordered him to pay $15,232.21 as his shared portion of the expenses. *Id*. Husband argues that the exhibits used to calculate these expenses reveal that Wife only paid $14,756.92, and that Husband only owes Wife $7,373.46. *Id*. at 31. Further, Husband states that he should

not be responsible for the total cost of the high-end computers that Wife purchased, because they are not reasonable items for reimbursement. *Id*. at 32. Husband argues that he should only be responsible for $1,000.00 towards the computers, and that his total amount owed to Wife for their children's post-secondary education should be reduced to $6,799.75. *Id*.

Under the Agreement, Husband agreed to share all costs of post-secondary education for the children. Agreement, 6/11/07, at 6 (unnumbered). Based on this language, Husband is responsible for *50%* of the costs of the children's post-secondary education, as they accrue. The Agreement does not limit Husband's obligations to only those costs paid by Wife. *See id*.

Based upon our review of the record, there is a discrepancy with regard to the total amount of college expenses, and neither party has reached an agreement with respect to the total amount incurred. *See* N.T., 12/16/14, at 23-48; *see also* Brief for Appellant at 31-33; Brief for Appellee at 14-15.[5] Thus, we reverse this portion of the Order and remand for hearing to re-calculate, independent of any previously conducted calculation, the post-secondary education costs.

Finally, Husband argues that he should not be responsible for Wife's counsel fees in this matter. Brief for Appellant at 34. Husband asserts that he did not breach the Agreement when he failed to make payments to Wife,

---

[5] It is unclear whether either Husband's or Wife's calculation of the total post-secondary education costs is correct.

based on legitimate legal excuses. *Id*. at 35. Specifically, Husband believed that he reconciled with Wife, that Wife abandoned the Agreement, and that Wife never notified him that payments were expected. *Id*. Further, Husband asserts that Wife never provided him with any record of expenses related to their children's post-secondary education. *Id*. Husband argues that he did not know what he owed Wife, and therefore, he did not breach the Agreement. *Id*.

Our review of the record reveals that any party found breaching the Agreement is responsible for the attorney fees of the non-breaching party incurred throughout enforcement of the Agreement. *See* Agreement, 6/11/07, at 10 (unnumbered). Husband concedes that he did not make any payments towards the $40,000.00 owed to Wife by December 31, 2011, nor did he make any payments towards his share of children's post-secondary education expenses. *See* Brief for Appellant at 35; *see also* N.T., 12/16/14, at 95. Based on these actions, Husband breached the Agreement. *See McMullen v. Kutz*, 985 A.2d 769, 770 (Pa. 2009) (stating that husband breached a marital settlement agreement when he promised to pay wife, and failed to make the payment); *see also Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 946 (Pa. Super. 2004) (stating that a breach of contract occurred where one party in a settlement agreement acknowledged their duty to pay the other party in the agreement, and failed to make the payment). Thus, Husband is required to comply with the terms

of the Agreement and pay Wife's costs and fees incurred from enforcing the Agreement. ***See*** Agreement, 6/11/07, at 10 (unnumbered); ***see also McMullen***, 985 A.2d at 770 (stating that husband was responsible for paying wife's attorney's fees when he breached the marital settlement agreement, where the agreement provided that the "breaching party must pay the attorney fees expended by the non-breaching party"). Accordingly, the trial court did not err in awarding Wife the costs and fees that she incurred in enforcing the Agreement. ***See id***.

Based on the foregoing, the Agreement is enforceable and Husband must pay Wife $40,000.00, and attorney fees resulting from enforcement of the Agreement. Husband must also share all costs of their children's post-secondary education. However, we must reverse the portion of the Order regarding the post-secondary education costs, and remand for further proceedings to determine the appropriate amount.

Order affirmed in part and reversed in part. Case remanded for further proceedings in accordance with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2015

- 12 -